MARY B. HOWELL, APPELLEE, V. ANNA K. BOWMAN, AP-
PELLANT.

FILED MAY 23, 1911. No. 16,431.

1. Landlord and Tenant: EVIDENCE. Where in an action of forcible
   entry and detention the defense that a lease signed by defendant
   was obtained by duress is established, but it further appears that
   soon after signing such lease defendant told her attorney of the
   circumstances under which the same was signed, and continued
   for a period of seven months thereafter to pay rent monthly to
   the lessor named in such lease, without protest or any act of
   repudiation, held a ratification of the lease as made and sufficient
   to sustain a judgment establishing the relation of landlord and
   tenant between the parties thereto.

2. Appeal: FINDINGS. The findings of the trial court, in a law action,
   supported by competent evidence, will not be set aside simply
   because it does not comport with the conclusion which this court,
   as triers of fact, might have reached.

3. ———: ———. In order to justify a reversal of the findings of the
   court below, in a law action, on a question of fact, such findings
   must be shown to be clearly wrong.

4. Trial: REQUESTS FOR DIRECTED VERDICT: WAIVER. Where each party
   to a trial requests the court to direct a verdict in his favor, he
   waives the right to thereafter insist that any question of fact
   should have been submitted to the jury.

APPEAL from the district court for Douglas county:
GEORGE A. DAY, JUDGE. *Affirmed.*

G. W. *Shields,* for appellant.

T. W. *Blackburn,* contra.

FAWCETT, J.

This is an action of forcible entry and detention com-
menced in justice court in Douglas county. Judgment
was there entered for plaintiff, and defendant appealed to
the district court, where trial was had to the court and
a jury. When both sides had rested, plaintiff and de-
fendant each moved for a directed verdict. The motion of

defendant was overruled and that of plaintiff sustained, and a verdict of guilty directed in favor of plaintiff. From a judgment entered upon such verdict, defendant appeals.

The controlling questions in this case are: First, did the relation of landlord and tenant exist between defendant and plaintiff or between defendant and Catherine E. Henneberry, from whom by mesne conveyances plaintiff derived title to the property in controversy? and, second, was defendant duly served with the statutory three days' notice to quit prior to the commencement of this action in justice court? The record shows that defendant's father, with his family, of which defendant was a member, entered into possession of the premises in 1867. Defendant's mother, father and brother all died there, the father in 1886 and the brother in 1890. Ever since the death of her brother defendant has resided there alone. A lease was introduced in evidence, dated August 16, 1905, signed by Catherine E. Henneberry, by Garvin Brothers, agents, and by defendant. Defendant testified that on the morning of that day one of the members of the firm of Garvin Brothers, James Allen, deputy United States marshal, and A. R. Hensel, a constable, came to her home; that they took hold of her furniture and said they were going to set it out in the street unless she signed that lease; that she could not communicate with her attorney, and did not know what to do; that they insisted upon her signing it, and she finally said: "I will sign this under protest." The blank space in the lease for designating the amount of rent to be paid thereunder is blank, but defendant testified that she paid $1 a month. The lease was for one month, from August 16, 1905, to September 16, 1905.

This lease is vigorously assailed by counsel for defendant at being without consideration and as having been "conceived in fraud, bad faith, brutality, and duress;" language which we think is fully justified by the circumstances attending its execution. Mr. Garvin and Mr. Allen were not put upon the stand to contradict the testimony of defendant. Constable Hensel was introduced as a witness,

Howell v. Bowman.

and the only contradiction he gave was that nothing was
said about duress. It appears therefore that these three
able-bodied men, two of them well known officials, swooped
down upon this lone woman on that morning, and coerced
her into signing the lease in order, as she believed, to pre-
vent having her furniture set out upon the street. If the
establishing of the relation of landlord and tenant be-
tween defendant and Mrs. Henneberry depended alone
upon the signing of the lease and the payment of one
month's rent upon that day, we would have no hesitation
in holding that neither Mrs. Henneberry nor any of her
grantees obtained any rights thereunder; but defendant
testified that, after the execution of this lease, she told
her attorney about it, before the commencement of this
suit. "Q. When did you tell him, near, about when? A.
Oh, perhaps a month or more. Q. What did he say to
you? Go on and pay the rent? A. I do not know what he
did say. Q. You did not stop paying the rent after he
told you? A. No. Q. You went right on? A. Yes, sir.
Q. You continued to pay the rent without any protest fur-
ther than what you have stated up to and including some
time in April, 1906? A. I did not consider that it was
necessary. Q. Answer the question, you did do that? A.
Yes, sir." It appears therefore from her own testimony
that about a month after she had been coerced into sign-
ing the lease she told her attorney about it, and yet she
continued, thereafter, to pay the rent from month to
month for about seven months longer, or about eight
months in all, without repudiating the lease or ever again
entering any protest. She was not acting under duress
when she made these subsequent monthly payments of
rent. This was clearly a ratification of the lease, and we
see no escape from holding that the relation of landlord
and tenant thereafter existed between defendant and Mrs.
Henneberry and the latter's grantees.

Section 1022 of the code, relating to actions of forcible
entry and detention, provides: "It shall be the duty of
the party desiring to commence an action under this chap-

ter, to notify the adverse party to leave the premises for the possession of which the action is about to be brought, which notice shall be served at least three days before commencing the action, by leaving a written copy with the defendant, or at his usual place of abode if he cannot be found." The notice served in this case was dated November 8, and required defendant to vacate the premises in controversy within four days from the time such notice should be served upon her. A copy of the notice was introduced in evidence, with the indorsement thereon by constable Hensel that he served the notice November 9, 1907, by leaving a true copy of the same at the usual place of residence of defendant. Hensel was called as a witness, and the substance of his testimony on direct and cross-examination is that, when he went to defendant's residence to serve the notice, he rapped first on one door and then on another, and that, getting no response, he inquired at the place next door and at Hayden's warehouse across the street, and then went and put the notice under defendant's door. When plaintiff was introducing her evidence in rebuttal, Hensel was again placed upon the stand, and then testified that he went to defendant's residence twice that day, once in the morning and the second time in the afternoon, and was unable to obtain any response to his raps either time. He says, upon this last examination, that he served the notice in the afternoon, but of this we entertain some doubt. His testimony, when he was upon the stand the first time, indicates pretty clearly that the notice was put under the door at the time of his first visit, if indeed he made a second visit. His testimony the second time looks very much like an attempt to bolster up his testimony given in chief.

However that may be, this is a law action, and we have repeatedly held that we will not set aside a verdict or the findings of a trial court, unless such verdict or findings are clearly wrong, even though we might have found differently had we been sitting as the triers of fact. The trial court held that the notice in question was duly served, and we cannot say that such holding is clearly wrong.

It is urged in defendant's brief that, "if the proof of notice to quit in the manner provided by the law was not satisfactory, or was not such as to leave no other reasonable inference in any ordinary mind than that the notice was properly given, then the case should have been submitted to the jury on proper instructions, and the peremptory instruction for the plaintiff was error.". This would be true but for the fact that, by the mutual motions of the parties for a directed verdict, all questions of fact involved in the case were withdrawn from the jury and submitted to the court for its determination. *Dorsey v. Wellman*, 85 Neb. 262; *Phenix Ins. Co. v. Kerr*, 129 Fed. 723; *Martin v. Harvey, ante,* p. 173.

Upon a consideration of the whole case, we reluctantly conclude that the judgment of the district court should be, and it is,

AFFIRMED.

LETTON, J., concurs in the conclusion.